DANIEL LOEWENTHAL t/a Loewenthal Construction
Company *v.* SECURITY INSURANCE
COMPANY OF HARTFORD

[No. 145, September Term, 1981.]

*Decided November 4, 1981.*

The cause was argued before GILBERT, C. J., and MORTON
and THOMPSON, JJ.

*George H. Eggers* for appellant.

*James J. Debelius,* with whom were *Leonard C.
Greenebaum* and *Harlan L. Weiss* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant, Daniel Loewenthal, t/a Loewenthal Construction Company (hereinafter "Loewenthal"), brought an action for a declaratory judgment that the comprehensive general liability insurance policy with appellee, Security Insurance Company of Hartford (hereinafter "Security"), provided either coverage for or an obligation to defend Loewenthal against claims resulting in an action at law, instituted by Steven D. Newburg-Rinn *et ux., et al.* against Daniel Loewenthal, etc. In the declaratory judgment action, the Circuit Court for Montgomery County (Mitchell, J.), sitting as a court of equity, by order dated December 2, 1980, granted Security's motion for summary judgment and denied that of Loewenthal, finding that under the insurance policy Security had no obligation to defend Loewenthal in the suit at law. It is from this action that Loewenthal now appeals.

The "Declaration," filed by Newburg-Rinn against Loewenthal alleges, in pertinent part:

"[Loewenthal] commenced performance on or about June 26, 1978. In direct contradiction to the explicit instructions of the plaintiffs' architect as to the procedure to be utilized in excavating the basement area of the Newburg-Rinn residence, [Loewenthal] bulldozed the entire center area of the basement prior to providing adequate bracing and support for the existing foundation. [Loewenthal] had completed a substantial part of the excavation, when, on July 23, 1978, cracks began to appear on one side wall under which [Loewenthal] had excavated.

Soon thereafter, the inadequate bracing and underpinning were pointed out to [Loewenthal] by the plaintiffs' architect, and [Loewenthal] then promised that he would correct the situation. [Loewenthal] inspected the site on July 4, 1978 and again promised to correct the problem, however this was not done. In addition, [Loewenthal] had an implied contractual obligation to perform the work

he undertook with skill and care, as is required by one doing excavation work in the building community.

Notwithstanding [Loewenthal's] representations, and as a result of his breach of contract in failing to properly perform the excavation and underpinning work as contracted, and by failing to perform this work with skill and care, a major portion of the improvement suffered serious property damage. As a direct and proximate result of [Loewenthal's] breach, emergency repairs were required to prevent further destruction, and it was necessary to replace portions of walls, floors and other structural elements. This also necessitated plaintiffs being caused to vacate their home and to seek temporary shelter."

As a result of Loewenthal's alleged negligent actions, the Newburg-Rinns claim damages as measured by "(1) lost rental value of their home, (2) time differential losses in replacement costs, (3) lost wages, (4) property damage, and (5) pain, suffering and mental anguish."

The comprehensive general liability insurance policy issued by Security to Loewenthal provides, in pertinent part:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. *bodily injury or* B. *property damage* to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . ." (Emphasis supplied.)

The hazards insured under the policy were essentially excavation, plumbing ("gas, steam, hot water or other pipe-fitting, including house connections, shop and retail stores or display rooms"), and carpentry ("in the con-

struction of detached private residences for occupancy by one or two families and private garages in connection therewith"). However, under the exclusionary provision relevant to this appeal, the policy did not apply

> "to property damages included within . . . (2) the collapse hazard in connection with operations identified in this policy by a classification code number which includes the symbol 'c,' (3) the underground property damages hazard in connection with operations identified in this policy by a classification code number which includes the symbol 'u'."

As set out in the definitional section of the policy,

> " 'collapse hazard' includes 'structural property damage' as defined herein and property damage to any other property at any time resulting therefrom. 'Structural property damage' means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, burrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The collapse hazard does not include property damage (1) arising out of operations performed for the named insured by independent contractors, or (2) included within the completed operations hazard or the underground property damage hazard, or (3) for which liability is assumed by the insured under an incidental contract:
>
> . . .
>
> '[U]nderground property damage hazard' includes underground property damage as defined herein and property damage to any other property at any time resulting therefrom. 'Underground property damage' means property damage to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar

property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving. The underground property damage hazard does not include property damage (1) arising out of operations performed for the named insured by independent contractors, or (2) included within the completed operations hazard, or (3) for which liability is assumed by the insured under an incidental contract."

Although Loewenthal paid a premium to eliminate the underground property damage hazard exclusion, there is no question that Loewenthal did not purchase the collapse hazard coverage. Subject to the collapse hazard exclusion were the operational hazards "Excavation 15111 x c" and "Underpinning Buildings or Structures — including incidental shoring, removal or rebuilding of walls, foundations, columns or piers ... 17885 sxc." Damages arising from excavation or underpinning operations would be covered by the policy if they fell within the underground property damage hazard, but excluded from policy coverage if within the collapse hazard exception.

Loewenthal argues that the policy provides coverage or an obligation to defend for the damage to the Newburg-Rinns for any one of four reasons:

(1) the collapse hazard exclusion is inapplicable and/or unenforceable;
(2) the occurrence is potentially covered by the underground property damage provision;
(3) there is a potentiality of coverage under the basic policy provisions, notwithstanding the above two exclusions;
(4) if the collapse hazard exclusion applies, Security is obligated to provide a defense because of

the plaintiffs' allegations of personal injuries, which are clearly not excluded from coverage under the collapse hazard exclusion.

Turning first to the procedural posture of this case, Maryland Rule 610 provides that a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues as to any material fact and the movant is entitled to judgment as a matter of law.

Although a summary judgment in a declaratory judgment action is the exception rather than the rule, circumstances may warrant the entry of a full or partial summary judgment. *See Pennsylvania Nat. Mut. v. Gartelman,* 288 Md. 151 (1980); *National Grange Mut. Ins. v. Pinkney,* 284 Md. 694 (1979). As the Court of Appeals stated in *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 29 (1974), "[w]hile a declaratory decree need not be in any particular form, it must pass upon and adjudicate the issues raised in the proceeding, to the end that the rights of the parties are clearly delineated and the controversy terminated . . . ." The issues presented warrant a summary disposition.

On the issues properly before us, there is no factual dispute disclosed by the pleadings and affidavits. Rather, the parties disagree on what label should be attached to the facts. There being no dispute as to fact, Security's liability under the policy turns on the construction of the policy exclusions; this presents a question of law for the court.

The applicable law is set forth in Appleman, *Insurance Law and Practice* (Berdal ed.) § 4683, as follows:

"An insurer's duty to defend an action against the insured is measured by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff."

*See also Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 407 (1975), and numerous authorities cited therein.

Furthermore, where the complaint does not state facts sufficient to clearly bring the case within or without coverage, the general rule, followed in Maryland, is that the insurer is obligated to defend if there is potentially a case within policy coverage. *Brohawn, supra,* at 408-409; *U.S.F.&G. v. Nat'l Pav. Co.,* 228 Md. 40, 54-55 (1962); Annot., 50 A.L.R.2d 458 (1956).

### Collapse Hazard Exclusion

Loewenthal does not agree with Security's reading of the policy that no coverage can be provided for "collapse of or structural injury to any building or structure due to (1) ... excavating ... or (2) ... shoring [or] underpinning ... any building or structure ..." (collapse hazard definition)," in view of the fact that Loewenthal specifically was purchasing insurance for excavation hazards.

Loewenthal first argues, quoting *D'Agostino Excavators, Inc. v. Globe Indemnity Co.,* 184 N.Y.S.2d 378 (1959), that "the [collapse hazard] exclusion cancels out the purported [excavation] coverage, a result that could not have been contemplated by the parties." In Loewenthal's eyes, although the policy purports to cover him for property damages and personal injuries caused by and during excavation activities, the collapse hazard provision, which excludes coverage for property damages if there is "collapse of or structural injury to any building or structure," would preclude coverage for damage to buildings and "anything constructed, [such as] water pipes, electrical conduits, sewers ... ." In effect, the exclusion "would deny to Loewenthal any coverage for any damages due to excavation."

We do not, however, agree with Loewenthal's definition of "structural property damage," or his conclusion that the policy coverage is meaningless in light of the exclusions." Pipes and sewers are not included within "structural property damage." [1]

---

1. This is evident from the insurance policy's definitions of "underground property damage" and "structural property damage."

It is only such structural property damage resulting from excavation procedures which is excluded from coverage under the collapse hazard provision. As appellee points out in its brief and in argument to the trial judge, other types of damages resulting from excavation operations would be covered regardless of the collapse hazard exclusion, including structural damages resulting from the insured's actions where the initial damage was not structural property damage, as well as personal injuries. For example, appellee submits the policy would provide coverage for:

> "(1) a supporting brace falling over and injuring the owner of a residence,
> (2) a bulldozer accidentally hitting and damaging a motor vehicle, shrubbery ... animals ...,
> (3) a backhoe accidentally crushing a plumbing fixture, tearing out wiring, or causing damage to other non-structural elements; and
> (4) an antique clock accidentally broken by an employee while digging a hole for a drainage pipe."

We cannot agree with appellant's contention that the collapse hazard exclusion is unenforceable because of overbreadth. The collapse hazard exclusion limits but does not render meaningless the coverage generally afforded excavation operations in the "description of hazards" portion of the policy.[2]

Loewenthal next argues, without going into any specifics, that the occurrence at issue does not fall within the collapse hazard exclusion. He merely argues the broad concept of "potentiality." Under that concept, "[e]ven if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy." *Brohawn, supra,* at 408, citing *U.S.F.&G. v. Nat'l*

---

**2.** It is also important to note in this regard that the insurance policy, which listed the appellant's business as "Home Improvement Contractor," provided coverage for plumbing and carpentry hazards as well.

*Pav. Co., supra,* at 54. Loewenthal attempts to find a "potentiality" of coverage and thus an obligation to defend in what it terms ambiguities and uncertainties in the policy.

It seems quite clear to us that the occurrence fits squarely within the collapse hazard exclusion for which no protection was purchased. As described in the plaintiffs' declaration, appellant contracted "to perform . . . excavation work in accordance with the plans of the plaintiffs' architect, and . . . in addition . . . underpinning of the foundation and shoring and reenforcing of the foundation, while the foundation was underway." Appellant "bulldozed the entire center area of the basement prior to providing adequate bracing and support for the existing foundation" and thereafter "cracks began to appear on one side wall under which [appellant] had excavated." The damage alleged is clearly structural injury [3] to a building due to alleged negligence in excavating or shoring or underpinning the building. See policy definition of "collapse hazard." As such, the structural damage resulting from appellant's activities is excluded from coverage under the collapse hazard exclusion.

## Underground Property Damage Hazard

Appellant next argues that appellee is obligated to defend because of a potentiality of coverage under the underground property damage hazard provision, an exclusionary provision of the policy which had been purchased by appellant.

The applicability of the underground property damage hazard provision was not timely raised by appellant's counsel. The briefs and arguments on the motions for summary judgment raised as the sole issue the interpretation and enforceability of the collapse hazard exclusion. No mention of the coverage provided by the underground property dam-

---

**3.** It matters not, as appellant contends, that there was not a sudden and basic change in the character of the structure so as to be a "collapse," as defined in other jurisdictions. *See* Hartford Accident & Indemnity Co. v. Crider, 392 F. Supp. 162, 169 (Ill. 1974). As explicitly defined in the insurance policy, the structural property damage excluded from coverage under the collapse hazard exclusion includes structural injury to as well as collapse of any building or structure.

age hazard provision was made by appellant until motion to reconsider the court's rulings on the cross-motions for summary judgment. On the motion to reconsider, appellant's counsel proffered to the trial judge that "the underground property damage hazard wasn't argued ... on the prior hearing." The trial judge, without more, said: "Very well, Motion is denied."

This Court has stated, in *Angell v. Just,* 22 Md. App. 43, 47 (1974):

> "It is well settled in Maryland that the grant or refusal of a rehearing lies within the sound discretion of the trial court. The action of the trial court upon such motion will not be disturbed on appeal except under the most compelling and extraordinary circumstances." (Citations omitted.)

There are no such circumstances to recommend a reconsideration here. Appellant does not allege that new facts came to light since the motions were first ruled on. To the contrary, the fact that there might have been initial damage to water pipes, such as would put the occurrence within the underground property damage hazard coverage, was set out in appellant's affidavit filed with his motion for summary judgment.

## Personal Injury Allegations

Although appellant's third contention is totally without merit,[4] we find his fourth persuasive.

Appellant argues that appellee is obligated to defend him because of the Newburg-Rinns' allegation of personal injuries, loss of wages and rental income in that the insurer promised to pay for bodily injury and property damage due to covered occurrences while the collapse hazard exclusion precluded coverage only for property damage.

---

4. *See* (3) *supra,* page 116.

Although the appellee concedes the point that if there were bodily injuries it would be obligated to defend, it argues that damages for mental anguish as alleged by the Newburg-Rinns will not be awarded where there is not physical injury as well.

It is another general principle of insurance law that the duty to defend encompasses even frivolous and unfounded allegations if, as in the case at bar, a policy clause so provides. Because of the appellee's agreement to defend any suit against the insured seeking damages "even if any of the allegations of the suit are groundless, false or fraudulent," there is a duty to defend any claim whenever it is potentially within the policy and even though the claim has no basis in fact. As interpreted by Chief Judge Learned Hand in *Lee v. Aetna Casualty and Surety Co.,* 178 F.2d 750, 751-752 (2d Cir. 1949, and quoted by the Court of Appeals of Maryland in *Brohawn, supra,* at 410, the insurer's promise to defend even groundless allegations means that

> " 'the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury "covered" by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact "covered." The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is "groundless." ' "

The Court in *Brohawn,* continued, at 409-410:

> "Although the type of policy here considered is most often referred to as liability insurance, it is 'litigation insurance' as well, protecting the insured from the expense of defending suits brought against him. By clear and unequivocal language, [appellee] has assumed the obligation of relieving its insured of the expense of defending an action alleging and seeking damages within the policy coverage. Addi-

tionally, the insured could reasonably expect that the insurer will employ its vast legal and investigative resources to defeat the action for the mutual benefit of both the insurer and the insured." (Citation omitted.)

Although appellant is not correct in his contention that the appellee is obligated to defend the entire suit,[5] appellee is obligated to defend that portion of the claim which related to bodily injuries. "Bodily injury," defined in the policy as "bodily injury, sickness or disease sustained by any person . . . including death at any time resulting therefrom," encompasses the claim of pain, suffering, and mental anguish.

For these reasons, summary judgment should have been entered in favor of appellant with respect to appellee's obligation to provide a defense to the plaintiffs' claims of pain, suffering, and mental anguish.

> *Judgment vacated; case remanded for entry of summary judgment and of a declaration in conformity with this opinion; costs to be paid by appellee.*

---

5. Although many courts which have addressed the issue have not permitted apportionment of defense costs between the insurer and the insured, *see, e.g.,* Tampa Elec. Co. v. Stone & Webster Engineering Corp., 367 F.Supp. 27 (M.D.Fla., 1973); Home Ins. Co. v. Pinski Bros., Inc., 500 P.2d 945 (Mont., 1972); St. Paul Fire & Marine Ins. Co. v. Hodor, 200 So.2d 205 (Fla. App. 1967), the rationale behind these authorities is that an insurer must bear the entire cost of defense only when there is no reasonable means of prorating the costs of defense between excluded and uncovered items. *See* National Steel Const. Co. v. National U. Fire Ins. Co., 543 P.2d 642 (Wash. App. 1975). Such a consideration is not the case here since defense costs can be readily apportioned.