581 A.2d 452

**EASTERN SHORE FINANCIAL RESOURCES, LTD. t/a Benson & Wales Insurance, et al.**

v.

**DONEGAL MUTUAL INSURANCE COMPANY, et al.**

No. 130, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Nov. 2, 1990.

Kathleen McDermott (Barrett W. Freedlander and Weinberg and Green, on brief), Baltimore, for appellants.

Marc K. Sloane, Larry J. Albert and Niles, Barton and Wilmer, on brief, Baltimore, for appellee, Old Guard Mut. Ins. Co.

Kristine K. Howanski, David M. Buffington, James F. Childress and Semmes, Bowen & Semmes, on brief, Baltimore, for appellee, Donegal Mut. Ins. Co.

Argued before WILNER, BISHOP and FISCHER, JJ.

WILNER, Judge.

At issue here is whether appellees Old Guard Mutual Insurance Co. (Old Guard) and Donegal Mutual Insurance

Co. (Donegal) were obligated to defend appellant John W. Insley in an action brought against him by Kim and Pamela Henry and whether, as a result of not defending him, they were required to reimburse Insley for the sums he expended in defending that action himself. The Circuit Court for Talbot County found that the companies had no such duty. We shall affirm.

## I. *The Parties And The Policies*

John Insley was the president, and an employee, of a Delaware corporation known as Eastern Shore Financial Resources, Ltd. (ESFR). ESFR did business in Maryland, trading as Benson & Wales Insurance (B & W Ins.). B & W Ins. is apparently just a trade name and not an entity in itself.

Insley, individually, had a homeowner's policy issued by Old Guard. That policy obligated Old Guard to defend Insley against any claim for bodily injury or property damage "to which this coverage applies." Specifically excluded from that coverage, however, was "bodily injury or property damage ... which is expected or intended by the insured."

The Donegal policy was one of business insurance. It was issued to, and declared as the named insured, "Eastern Shore Financial Resources Ltd./Benson & Wales Ins," but it defined an "insured" as including not only the named insured but also "any employee of the named insured while acting within the scope of his duties as such" and, if the named insured was designated as other than an individual, partnership, or joint venture, "any executive officer ... thereof while acting within the scope of his duties as such." Donegal undertook in the policy to defend "any claim or suit against the insured seeking damages under this policy." Part of the damages payable under the policy were those arising from bodily or personal injury caused by an "occurrence." An "occurrence," in turn, was defined as an accident which results in bodily injury or property damage

"neither expected nor intended from the standpoint of the insured."

## II. *The Tort Action*

Kim and Pamela Henry sued Insley and "Benson & Wales, Inc." in the Circuit Court for Talbot County.[1] In their Amended Complaint—the pleading relevant to these proceedings—they alleged in introductory paragraphs that Benson & Wales, Inc. was a corporation doing business in Maryland, that Insley was a Delaware resident who was a "shareholder and employee of Benson & Wales, Inc.," that on the afternoon of March 5, 1987, Kim Henry (inferably a police officer) encountered Insley on the parking lot of Benson & Wales, Inc. in St. Michaels, and, aware that several warrants were outstanding against Insley, approached him to question him about the warrants, and that, upon this encounter, Insley jumped into his car and led Henry on a high-speed chase through St. Michaels, eventually returning to the Benson & Wales, Inc. parking lot. The complaint then alleged in relevant part, that Insley left his vehicle, whereupon:

"9.   Plaintiff took ahold of the defendant by the arm in order to arrest the defendant. Defendant Insley, however, physically struck Officer Henry shoving him out of the way while trying to run in the front door of Benson & Wales, Inc. Officer Henry followed the defendant and tried to hold the defendant to keep him from entering the door.

10.   At this time, the defendant again struck the plaintiff shoving and pushing him, causing severe and permanent injuries to the plaintiff's knee.

11.   By this time, Officer Evans was able to assist Officer Henry in restraining the defendant and handcuffing the defendant, putting him under arrest.

---

**1.** The naming of "Benson & Wales, Inc." instead of ESFR or "Benson & Wales Ins." touched off a debate in the Circuit Court that we need not deal with in this appeal.

12. Within an hour after the arrest, the plaintiff's knee became swollen to the extent that he could no longer walk on it."

Upon these averments, six causes of action were pled, only two of which (Counts I and III) are relevant to this proceeding.[2] In Count I, Kim Henry first incorporated by reference all earlier allegations and then stated that "in the course of the events set forth in the preceding paragraphs, the defendant committed an intentional battery on the plaintiff in such a way that the defendant knew or should have known that the plaintiff would be injured as a result of the bodily contact." He further stated that, "as a result of the bodily contact set forth above," he was caused to suffer permanent injuries to his knee and other parts of his body by Insley.

In Count III, after incorporating fully all preceding averments, including those contained in Count I, Henry alleged that:

"21. On March 5, 1987, in the course of the events set forth in the preceding paragraphs, the defendant had a duty to cooperate with the plaintiff who was attempting to make an orderly arrest.

22. Defendant, by forc[i]bly shoving, striking, and pushing plaintiff while resisting plaintiff's attempts to make an orderly arrest, breached this duty to cooperate.

23. As a result of defendant's conduct in negligently resisting arrest, plaintiff was caused to suffer serious, severe, and permanent injury to his knee."

### III. *These Proceedings*

ESFR and Insley filed this declaratory judgment action against Donegal and Old Guard in January, 1989. They

---

**2.** Two of the six counts (Counts II and IV) were brought against Benson & Wales, Inc. for vicarious liability. In June, 1987, the Henrys voluntarily dismissed those two counts, leaving Insley as the only defendant. Counts V and VI were loss of consortium claims in which Mrs. Henry joined. They added no new averments relevant to the issues now before us.

alleged the issuance of the two policies noted above, that Insley was the president of ESFR, a Delaware corporation doing business in Maryland and sometimes trading as Benson & Wales Insurance, that Insley was an insured under both policies, that he was arrested on March 3, 1987, that during the course of the arrest, a police officer was injured, and that the officer and his wife thereafter sued Insley and Benson & Wales for intentional battery and negligence. In Count I, against Donegal, the plaintiffs contended that the incident alleged in the *Henry* suit constituted an "occurrence" under the policy, that Donegal was obliged to defend them, that they had requested a defense, and that Donegal had refused to provide one. They asked for a declaratory judgment that they were covered and owed a defense under the policy, that they be entitled to select their own counsel to defend the *Henry* suit, and that they be reimbursed for all costs of that defense. Count II was against Old Guard and contained similar allegations and prayers for relief. Copies of the Amended Complaint in *Henry* and the two policies were attached as exhibits to the Complaint.

Donegal and Old Guard answered the complaint, raised a number of affirmative defenses, and moved for summary judgment. Insley and ESFR filed a cross-motion for summary judgment against Old Guard. Common to the defenses raised by both companies was the assertion that no coverage existed, and therefore no defense was due, because the injuries alleged by Henry were intentionally inflicted by Insley. That was certainly clear, they said, in Count I; even Count III, charging a negligent resisting of arrest, they contended, was based on Insley's intentional battery. Donegal raised the additional defense that Insley was not an insured under its policy, in part because he was not a named insured and, with the dismissal of Counts II and IV, was not alleged to be an employee or executive officer of a named insured, and in part because, even if he were an employee or executive officer of the named insured, the intentional behavior alleged was not within the scope of his duties.

On August 18, 1989, the court entered an order granting the insurers' motions for summary judgment and denying Insley's and ESFR's cross-motion. The basis for the order was as follows:

"This Court finds as a matter of law that plaintiff John W. Insley was not acting within the scope of his employment on March 5, 1987 at the time of the occurrence of the alleged events giving rise to these lawsuits. This Court further finds that the underlying tort suit filed by the Henrys is clearly based on the alleged intentional torts of plaintiff John W. Insley and thus as a matter of law there is no potentiality of coverage under defendant Donegal Mutual Insurance Company's policy."

When this order was entered, the *Henry* case had not yet been tried, although it apparently had not been dormant. On August 28, Insley and ESFR filed a motion to alter or amend the judgments, contending, in essence, that (1) as to Donegal, the court erred in finding, as a matter of law, that Insley was not acting within the scope of his employment with ESFR and (2) the court erred in concluding that the *Henry* case was based solely on intentional tort and that, consequently, there was no potential coverage. Attached to the motion was an excerpt from the deposition testimony of Kim Henry taken on August 11, 1989, in which he described his altercation with Insley. Henry said that he grabbed Insley, that Insley twisted and tried to pull away, and that Henry then lost strength in his left leg and felt a pain in his knee. In the course of the deposition, Henry stated (referring to a conversation later at the jail):

"A   We read the charges to him. Officer Evans read the citations to him. Mr. Insley looked at me and says, I don't know what happened to your knee, but says, if I caused any trouble, I'm sorry. And my insurance will take care of the troubles, you know, if you're not covered through the department.

Q   Did he intend to injure you, do you think?

A   I don't believe so.

Q And every motion that he made, according to what you have said here today, seemed to be a motion of a person attempting to get away from you?

A Yes, sir.

Q And not to go back to assault you?

A Right."

Based to a large extent on that testimony, Insley and ESFR urged that the injury was not an intentional one.

On September 15, 1989, Insley and ESFR filed a Supplemental Memorandum in support of their motion, in which they informed the court that, on September 12, the *Henry* case was tried and the jury returned a special verdict that Insley was liable for $100,000 under the negligence count. This, they contended, established that Insley was entitled to a defense. It is not clear whether the court ever considered this Supplemental Memorandum; on September 20, it filed an order dated September 11 denying the motion to alter or amend the judgment. This appeal ensued, in which Insley and ESFR complain that:

(1) "Old Guard Mutual's refusal to defend its insured was unjustified where the terms of the homeowner's policy and the allegations of the tort suit created a potentiality for coverage."

(2) "The Circuit Court erred in denying the insureds' motion to alter or amend judgment where extrinsic facts revealed there was a potentiality for coverage."

and

(3) "The Circuit Court erred in finding that Donegal Mutual had no duty to indemnify its insured because as a matter of law the insured was acting outside the scope of his employment."

Before entering into a discussion of these questions, we add a *postscript*. Following the jury's verdict in the *Henry* case, the court granted a new trial. The Henrys then filed a Second Amended Complaint adding ESFR as a defendant, deleting Count III—the charge of negligent resisting arrest

that is the focal point of the dispute here—and substituting for it an action for negligence that Donegal and Old Guard concede creates potential coverage. Donegal has assumed the defense of ESFR and Old Guard has agreed to defend Insley with respect to the retrial.

### IV. *Discussion*

### A. Old Guard

The issues raised by appellants relevant to Old Guard present essentially three questions: (1) whether the averments of Count III of the *Henry* complaint suffice to show potential coverage under its policy; (2) if not, whether the documents and events brought to the court's attention in the motion to alter or amend the judgment—Kim Henry's deposition testimony and the special verdict of the *Henry* jury—may be considered in determining whether there was potential coverage; and (3) if so, whether they suffice to establish potential coverage. We shall answer the first two questions in the negative and will therefore be spared from addressing the third.

### (1) The Complaint

■ The duty which Insley seeks to enforce here is a contractual one based on the insurance policy. The substantive law in this regard was succinctly stated in *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 407, 347 A.2d 842 (1975):

> "The obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend.... Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy."

(Emphasis in original.)

As further explicated in *St. Paul Fire & Mar. Ins. v. Pryseski,* 292 Md. 187, 193, 438 A.2d 282 (1981):

"In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit."

Unlike the situation in *Pryseski,* there is no dispute here with respect to the first of these questions, at least as to the Old Guard policy. It would cover a claim for bodily injuries unless those injuries were "expected or intended by the insured." The issue before us concerns the second question—specifically whether the allegations in the Henrys' amended complaint suffice to create at least a potentiality that the finder of fact could determine that the bodily injuries allegedly inflicted upon Kim Henry by Insley were not "expected or intended by the insured."

The factual underpinning of the Henrys' complaint is set forth in ¶¶ 9–12, quoted verbatim above. Insley "physically struck Officer Henry shoving him out of the way while trying to [evade arrest]." When Henry pursued him, Insley "again struck the plaintiff shoving and pushing him, causing severe and permanent injuries to the plaintiff's knee." Those were the injuries sued upon and the circumstances under which they were inflicted. In Count I, Henry asserted that this conduct on Insley's part constituted an intentional battery "in such a way that the defendant knew or should have known that the plaintiff would be injured as a result of that bodily contact."

In Count III, as we noted, all of these allegations, including those asserted in Count I, were specifically incorporated by reference. That Count, then, was not only based on the same conduct but was also premised on the charge that the striking, pushing, and shoving was intentional and that Insley knew or should have known that Henry would be

injured thereby. Count III adds to that the averment that this conduct was committed in the course of Insley's resisting Henry's attempt to effect an arrest, that Insley had a duty to cooperate with Henry in that endeavor, that he breached that duty, and that his breach constituted negligence. It is these additional statements, and they alone, that arguably create potential coverage.

Like Judge Horne below, we are not persuaded. The charge leveled in Count III is not like the alternative negligence claims that have been found to create potential coverage. In *Brohawn*, for example, the injuries alleged in the complaint arose from an altercation that occurred as the plaintiffs, employees of a nursing home, attempted to prevent the defendants from removing the latter's relative from the home. In Count I of the complaint, the plaintiffs contended that they were willfully and maliciously assaulted; in Count II, they contended that the defendants "did strike and push [them] in a negligent and careless manner, and the negligence of the defendants consisted of their placing of their hands upon the plaintiff[s] and pushing [them] in such a manner and with such force that the plaintiff[s] would be injured if they persisted in their conduct...." *See* Record Extract (S.T.1975, No. 1) E 6–7. Similarly, in *Oweiss v. Erie Ins. Exchange*, 67 Md.App. 712, 509 A.2d 711 (1986), the tort action, arising from an altercation following a traffic accident, alleged, in one count, that the defendant willfully and maliciously assaulted the plaintiff; in another, it alleged that the defendant "did come into contact with the plaintiff ... and ... then and there failed to exercise reasonable control and care and he negligently caused the plaintiff to suffer ... injuries ..." and that "[t]he plaintiff did not in any way cause or contribute to this injury which was negligently caused by the defendant." *See* Record Extract (S.T.1985, No. 1157) E 199. In neither *Brohawn* nor *Oweiss* were the averments of intentional conduct incorporated into the negligence counts.

Unlike those cases, there is nothing in Count III of the complaint before us even to suggest, much less to assert,

that the striking, pushing, or shoving was done negligently or that the harm resulting from it was unexpected or unintended. Nor is there any contention, in the complaint, that Insley was acting in self-defense—"perfect" or "imperfect"—for which coverage might exist. *See Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 694 P.2d 181 (1984); *Allstate Ins. Co. v. Novak,* 210 Neb. 184, 313 N.W.2d 636 (1981). With its incorporation of the earlier allegations, Count III continues to charge that the conduct was deliberate and that the harm caused by it was at least expected, if not intended. The negligence pled there was not directed at either the bodily contact or the resulting harm but arose instead from the wrongful perception by Insley that it was all right to resist Henry's effort to arrest him. That Insley was negligent in reaching that conclusion and thus in acting as he did does not mean that the injuries he inflicted on Henry were either unintended or unexpected. Given this combination—the express incorporation of averments of deliberate conduct and intentional or expected harm and the absence of specific averments that the bodily contact or the injuries resulting from it were unintended—it is evident to us that Count III continues to allege conduct and injury for which there was no potential coverage under the policy.

### (2) The Extraneous Evidence

■ Appellants acknowledge that *generally* an insurer's duty to defend is determined by reference to the policy language and the allegations made in the complaint. They urge, however, that this rule, which has become known as the Exclusive Pleading Rule, should not be followed "where the lower court has been presented with extrinsic facts clearly indicating that the insured neither intended nor expected bodily injury to result form his acts."

The nature, attributes, and rationale of the Exclusive Pleading Rule are described in Annotation, *Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend,* 50 A.L.R.2d 458 (1956). The author there concludes:

"It appears to be well settled that, generally speaking, the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action." *Id.* at 465.

and

In the cases cited for the proposition, "the view was taken that in the case of a conflict between the allegations in the complaint in the action against the insured and the actual facts as known to or ascertainable by the insurer, the allegations in the complaint determine the insurer's duty to defend." *Id.* at 498.

*See also* 7C J. Appleman, *Insurance Law and Practice* § 4683.

This rule is not a new one; some of the cases applying it date back to the 1920's and 1930's. One of the leading cases helping to establish the rule, however, came a bit later—*Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750 (2d Cir.1949). The tort plaintiff there—a customer of the insured—sued for injuries sustained when he fell down an elevator shaft in the insured's building. The plaintiff averred in his complaint that the insured had opened the elevator door for him and beckoned him to enter the elevator, but that, when he walked in, the elevator was not there and he fell into the shaft. The policy, one of premises liability, excluded from coverage liability based on the "use" of an elevator, but obligated the insurer to defend a suit even if groundless, false, or fraudulent. The Court, through Chief Judge Learned Hand, concluded that the complaint raised the possibility that the plaintiff's injuries did not arise from the "use" of the elevator. It further concluded, at 751, that "it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.'"

A number of theories have developed to justify this rule. In *Western World Ins. v. Harford Mut. Ins. Co.*, 784 F.2d 558 (4th Cir.1986), the Court expressed concern that, if the insurer was not bound by the allegations of the complaint and was able to rely on extrinsic facts, it "would be given the license to unilaterally resolve issues of interpretation and construction to its benefit without recourse." *Id.* at 562. Other courts, keying on the insurer's duty to defend claims even if groundless, have regarded this duty as being in the nature of "litigation insurance," intended to relieve the insured of the burden of actually proving that the claim is groundless. *See Lee v. Aetna Casualty & Surety Co.*, *supra*, 178 F.2d 750, 752; *Brohawn v. Transamerica Ins. Co.*, *supra*, 276 Md. 396, 408–09, 347 A.2d 842. These rationales, of course, would apply principally where it is the *insurer* who is attempting to rely on extrinsic facts to establish that the claim is *not* covered. Even in the converse situation, however, where, as here, it is the insured who is attempting to use such facts to show that there *is* coverage, the rule has been justified on the theory that the insurer's duty to defend extends only to claims covered by the policy and that "[i]f the declaration does not allege a liability within the coverage of the policy the insurance company is not required to defend." *Thomas v. American Universal Ins. Co.*, 80 R.I. 129, 93 A.2d 309, 312 (1952); *see also Boyle v. National Cas. Co.*, 84 A.2d 614 (D.C.1951).

Finally, it is evident that the Exclusive Pleading Rule developed before the advent and dispersion of "notice pleading," when complaints were required to state in some detail the factual basis of the claim. In that circumstance, it was normally not difficult to determine at least the nature of the claim, if not its substance, and thus to decide whether it fell within the terms of the policy. The Exclusive Pleading Rule thus constituted a nice bright-line rule fairly easy to administer.

Whatever may have been the rationale—and it was often not clearly articulated by the court—the rule found wide acceptance throughout the country, and indeed became the

norm. Although the rule has not been the subject of much critical discussion in the Maryland cases, it appears to us that, in both word and deed, the Court of Appeals has, in fact, adopted the essence of the rule, at least where it is the insurer who is attempting to establish non-coverage by reference to extrinsic facts. In *Brohawn v. Transamerica Ins. Co., supra,* 276 Md. 396, 347 A.2d 842, as we observed, the tort plaintiffs had charged, alternatively, that Mrs. Brohawn's conduct was both deliberate and negligent. In urging that her conduct was necessarily deliberate and therefore not covered under the policy, despite the alternative allegation of negligence, the insurer asked the Court to consider, and give conclusive effect to, the fact that Mrs. Brohawn had been charged criminally with assault as a result of the altercation, that she had pled guilty to that charge in the District Court, and that she had failed to explain her plea in the declaratory judgment action. The Court rejected the insurer's entreaty to give effect to that circumstance, holding instead that an insurer's obligations are to be determined by the "allegations in the tort actions" and that, if the plaintiffs "allege a claim covered by the policy," the insurer must defend it. *Id.* at 407, 347 A.2d 842. Cited prominently for that proposition was *Lee v. Aetna Casualty & Surety Co., supra,* 178 F.2d 750. *Brohawn v. Transamerica Ins. Co., supra,* 276 Md. at 408, 347 A.2d 842. *See also St. Paul Fire & Mar. Ins. v. Pryseski, supra,* 292 Md. at 193, 438 A.2d 282.

In *Western World Ins. v. Harford Mut. Ins. Co., supra,* 784 F.2d 558, the Fourth Circuit Court of Appeals regarded *Brohawn* as prohibiting a resort to extraneous facts in order to determine whether an insurer has a duty to defend. It said in that regard, 784 F.2d at 562:

"Harford admits that [the language of the complaint] does create the potential of coverage under its policy with the City, but asserts that an insurer can also look to the actual facts surrounding an event to determine whether or not coverage exists, and consequently to discern whether the insured has the duty to defend. We find no

case law directly supporting Harford's contentions and consider the insurer's position to be in clear conflict with the Court of Appeals of Maryland's decision in *Brohawn*."

The United States District Court for the District of Maryland reached the same conclusion in *Maryland Cas. Co. v. Armco, Inc.*, 643 F.Supp. 430 (D.Md.1986). Citing *Brohawn*, Judge Young concluded that under Maryland law, "[a]n insurer has an obligation to assess its duty to defend and indemnify against the allegations in the complaint alone." *Id.* at 434. These pronouncements have led one commentator to conclude, in more summary fashion, that "Maryland, like the majority of states, follows the exclusive pleading rule in determining whether an insurer has an obligation to defend its insured against a claimant's claim." A. Janquitto, *Insurer's Duty to Defend in Maryland*, 18 U.Balt.L.Rev. 1, 7 (1988).

The Exclusive Pleading Rule necessarily rests on the assumption that it is in fact possible to determine from the allegations of the complaint whether the claim falls within the policy coverage. As we indicated, under common law pleading requirements, this was not ordinarily a problem. Where "notice pleading," was adopted, however, that critical underpinning of the rule became structurally (and logically) unsound. As one commentator observed, *The Insurer's Duty to Defend Under a Liability Insurance Policy*, 114 U.Pa.L.Rev. 734–35 (1966):

"When pleading requirements were strict and variances of proof from pleadings were not tolerated, such a rule might have been completely dependable. But today's relaxed pleading requirements, notably the Federal Rules of Civil Procedure, are designed only to put an opposing party on notice and offer less assurance that the third party's complaint will accurately reflect its claim or predict the basis of any relief. The ease with which amendments to the pleadings to conform to the evidence may be made, absent prejudice to an opposing party, would by

itself be enough to make the complaint a poor measure of what is to follow."

This dilemma has indeed caused a number of courts, subject to the looser requirements, to abandon the Exclusive Pleading Rule, in whole or in part. *See, for example, Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (Cal.1966); *Rodriguez v. Government Emp. Ins. Co.,* 210 Neb. 195, 313 N.W.2d 642 (1981); *Milliken v. Fidelity and Casualty Company of New York,* 338 F.2d 35 (10th Cir.1964); *Spruill Motors, Inc. v. Universal Under. Ins. Co.,* 212 Kan. 681, 512 P.2d 403 (1973). The rule adopted in *Milliken* and *Spruill Motors,* as enunciated in the latter case, 512 P.2d at 407, is that:

"[A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. If those facts give rise to a 'potential of liability' under the policy, the insurer bears a duty to defend."

Whether this broader substitute is to be applied evenhandedly, i.e., to establish either coverage or non-coverage, is not entirely clear. In *City of Willoughby Hills v. Cincinnati Ins. Co.,* 459 N.E.2d 555 (Ohio 1984), the Court appeared to take the position that extrinsic evidence could only be used to establish coverage. At 558, it said:

"It remains true that where the pleadings unequivocally bring the action within the coverage afforded by the policy, the duty to defend will attach.... However, where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim. Thus, the 'scope of the allegations' may encompass matters well outside the four corners of the pleadings."

Appleman, *supra,* conversely, expresses an opposite "bent." At § 4683, p. 53, he states:

"[M]odern rules of pleading and practice focus on the facts of the case rather than on the theory of recovery stated in the complaint, and where the insurer is aware of facts, not in the pleadings, which clearly disclose an absence of coverage, it can refuse to defend or clarify its obligation by means of a declaratory judgment action. If it refuses to defend, it does so at its peril, but it should not be required to defend a case in which it has no economic interest."

Not everyone has abandoned the Exclusive Pleading Rule; it still appears to be the majority rule. *See* A. Janquitto, *supra,* 18 U.Balt.L.Rev. 1, 7. And in the States that *have* relaxed it, it is not yet clear just what kind of extrinsic evidence will suffice to justify a conclusion as to coverage or non-coverage or whether extrinsic evidence can be used to justify one conclusion where the allegations of the complaint do indeed suffice to establish a contrary conclusion. In short, although the Exclusive Pleading Rule may not be feasible where, under relaxed pleading rules, the tort complaint simply does not provide sufficient information to determine the potential for coverage, resort to extrinsic evidence to supplement or replace the complaint is not without its own set of problems.

Maryland has not adopted strict "notice pleading." Unlike Fed.R.Civ.P. 8(a), which requires, in relevant part, only "a short and plain statement of the claim showing that the pleader is entitled to relief," Md.Rule 2–302(b) requires the complaint to contain "such statements of fact as may be necessary to show the pleader's entitlement to relief...." Commenting on Rule 2–302, Judge Niemeyer and Ms. Richards, in *Maryland Rules Commentary,* note at 131:

"Section (b) of this rule requires that a pleading set forth the essential facts which entitle the plaintiff to the relief prayed or the defendant to the defense asserted. This section continues the practice of former Rule 310b, requiring the pleader to allege facts, not mere conclu-

sions. By way of contrast, the comparable federal provisions, Federal Rule 8(a), requires only a short and plain statement of the claim."

Under the Maryland Rule, the complaint must state a cause of action "with reasonable certainty, clearness and accuracy so as to apprise the defendant of the nature of the claim brought against him." *Smith v. Shiebeck*, 180 Md. 412, 420, 24 A.2d 795 (1942); *Campbell v. Welsh*, 54 Md. App. 614, 631, 460 A.2d 76, *cert. denied*, 297 Md. 108 (1983). There is no need, therefore, for Maryland to abandon or relax the Exclusive Pleading Rule; nor, of course, as we conceive that the rule was adopted by the Court of Appeals, are we at liberty to do so. For these reasons, we conclude that the circuit court did not err in refusing to consider or give effect to the two exhibits attached to Old Guard's motion to alter or amend the judgment.

### B. Donegal

■ The summary judgment in favor of Donegal was based on the court's finding, as a matter of law, that Insley was not acting within the scope of his employment when he injured Officer Henry on March 5, 1987. Citing *St. Paul Fire & Mar. Ins. v. Pryseski, supra*, 292 Md. 187, 438 A.2d 282, Insley complains that this is not the kind of determination that can properly be made as a matter of law in a "pre-tort suit declaratory judgment action." Ordinarily, he would be quite correct in that assertion, but this is not the ordinary case.

As we indicated earlier in this Opinion, the Henry complaint named both Insley and "Benson & Wales, Inc." as defendants. Paragraph 2 of the amended complaint averred that Insley was a shareholder and employee of that corporation. In Counts II and IV, where Henry sought damages against the corporation for Insley's conduct, Henry alleged that, at all times during the occurrence, Insley was an employee of Benson & Wales, Inc. and was acting within the scope of his employment. Except by virtue of the incorporation by reference of all earlier allegations into

Count III, that claim of agency was not repeated in Counts I or III. As we further noted, however, in June, 1987, the Henrys voluntarily dismissed Counts II and IV, and with that dismissal went all reference (and thus all averment) that Insley was acting within the scope of his employment during his altercation with Henry. The only remaining reference to Insley's employment status was the bare allegation in ¶ 2 that he was a shareholder and employee of Benson & Wales, Inc.

Normally, where there is some dispute as to the actor's agency status—whether he was an agent or employee or was acting within the scope of his agency or employment at the relevant time—that status will be an issue as well in the underlying tort case and will therefore be determined by the trier of fact in that case. The rule precluding it from being resolved in a preliminary declaratory judgment action derives from the broader principle that "where the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment." *Brohawn v. Transamerica Ins. Co., supra,* 276 Md. at 406, 347 A.2d 842. There are a number of valid reasons for this doctrine, not the least of which is to avoid the prospect of inconsistent judicial determinations.

There is no danger of that here, because the question of whether Insley was acting within the scope of his employment was withdrawn from the tort action, at least with respect to the first trial, and therefore could not be resolved by that trier of fact. It was, however, relevant to whether he was an "insured" under the Donegal policy, and it was therefore necessary for the court to determine that issue.

Insley's principal concern, it seems, is not with the effect of the court's conclusion on Donegal's obligation with respect to the first trial but rather its effect on the retrial. As noted, the Henrys have amended their complaint to name ESFR—Donegal's named insured—as a defendant and to include a recast action for negligence. Although Donegal has undertaken to defend ESFR in the retrial, it

has declined to join Old Guard in defending Insley. He seems to fear—perhaps with good reason—that Donegal may rely on the finding that he was not acting within the scope of his employment to deny indemnity to him in the event of another adverse judgment. That is not an issue we need address in this appeal, however. Upon the record presented to the circuit court, and on which it acted, we find no error in the summary judgment granted to Donegal.

JUDGMENTS AFFIRMED; APPELLANTS TO PAY THE COSTS.