637 A.2d 509

Robert **COCHRAN**

v.

**AETNA CASUALTY & SURETY COMPANY.**

**No. 665, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Feb. 24, 1994.

William S. Barton (M. Lynn Williams, Karen L. Smith and Urner, Nairn, Barton & Williams, on the brief), Hagerstown, for appellant.

John B. Kaiser (Kevin J. McCarthy and McCarthy, Bacon & Costello, on the brief), Lanham, for appellee.

Argued before MOYLAN, ALPERT and DAVIS, JJ.

ALPERT, Judge.

This is an appeal from an order of the Circuit Court for Allegany County, Maryland, granting summary judgment in favor of Aetna Casualty & Surety Co. ("appellee" or "Aetna") and thus denying Aetna's insurance coverage to Robert Cochran ("appellant"). Appellant asks us the following:

I. Did the circuit court err in granting summary judgment to Aetna based upon the determination that there was no potentiality of coverage under the Aetna policies and therefore, no duty to defend appellant in the *Beyer* action?

II. If the circuit court properly applied the exclusive pleading rule to conclude that no potentiality of coverage existed, does the application of the rule in the circumstances of this case offend the rationale and public policy which underlie the rule?

### The Proceedings Below

This case arises out of the refusal by Aetna to defend the appellant in an underlying tort action, pursuant to two liability insurance policies issued to J. Edward Cochran and Company, Inc. The exclusionary clause of each policy provides, in pertinent part:

This insurance does not apply to:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

The circuit court summarized the relevant facts as follows:

It is uncontroverted that Aetna issued two policies of liability insurance to J. Edward Cochran and Company, Inc. and that, at the time of the issuance of those policies, and on May 17, 1989 [the day of the incident] [appellant] was an officer, employee, Stockholder and director of J. Edward Cochran and Company, Inc. On May 17, 1989 the events giving rise to *Beyer, et ux v. Cochran* [the *Beyer* action] occurred. It is also uncontested that both policies were in full force and effect on that date. Assault and battery are

alleged by the plaintiff in *Beyer v. Cochran.* Upon receipt of the suit papers in that action, Cochran notified his insurer, Aetna, and tendered his defense to Aetna. Aetna declined coverage and refused to provide Cochran a defense. Cochran then hired private counsel to defend him in *Beyer.*

Appellant filed an action seeking declaratory relief against Aetna. He asserted that:

8. On March 19, 1990, the [appellant] and his father, who was an eyewitness [to the events in dispute], met with agents of the [appellee] to discuss the circumstances giving rise to the Complaint [i.e., the *Beyer* suit] and the [appellant] fully informed the agents of the [appellee] of the factual details regarding the allegations in the Complaint. The [appellant] requested that [Aetna] defend the pending action.

9. The [appellant] denies that his actions constitute an assault and battery or intentional infliction of emotional distress. Victoria Beyer [the plaintiff in the underlying tort suit] voluntarily joined into an argument between the [appellant] and his brother, Edward W. Cochran, Jr., and the [appellant] was protecting himself from the assault by his brother, Edward W. Cochran, Jr.

10. Thereafter, on April 2, 1990, with full knowledge of the facts as related by the [appellant], the [appellee] declined to provide coverage for losses claimed in the suit as well as to provide a defense to the same.

11. The allegations of Victoria Beyer ... are so conclusory and so vague as to make it impossible for the [appellee] to determine whether or not the exclusions in any of the policies are applicable. A "potentiality" of coverage exists because the suit fails to address the exception to the exclusion for bodily injury occurring while the insured is acting in defense of persons or property, and the suit allegations are so conclusory as to require investigation, which was in fact undertaken.

12. Since there is a "potentiality" of coverage, the [appellant] claims the [appellee] should be required to provide a defense on behalf of the [appellant].

The action sought to obtain a declaratory judgment requiring Aetna to defend appellant in the *Beyer* action, to provide reimbursement up to the extent of policy limits for any judgment entered against the appellant and to require Aetna to reimburse the appellant for attorney's fees incurred in the declaratory judgment action.

Aetna contended that appellant's actions were not covered under the policies and moved for summary judgment. It asserted that

[t]he policy exclusions ... make clear that any injury or property damage resulting from intentional acts are not covered. The undisputed facts of this case make clear that the [appellant's] actions in the Washington County suit fall within the exclusionary language of the policy. The [appellant] has been sued for committing an assault and battery against a fellow employee. Both the General Liability provisions of the policy at issue and the umbrella coverage make clear that bodily injury *expected or intended* by the insured is specifically excluded from coverage.

(emphasis in the original) Aetna asserted that *Eastern Shore Financial v. Donegal Mutual Ins.*, 84 Md.App. 609, 581 A.2d 452 (1990), *cert. den. sub nom, Insley v. Old Guard Mut. Ins. Co.*, 322 Md. 131, 586 A.2d 13 (1991) was dispositive of the issue since that case addressed whether intentional torts fell within or potentially within a similar insurance policy with a similar exclusionary clause. Aetna further contended that its duty to defend is determined by reference to the policy and the allegations made in the Complaint only and is not determined by extrinsic evidence as contended by the appellant. Therefore, pursuant to the exclusive pleading rule enunciated in *Eastern Shore*, Aetna asserted that the court may only review the *Beyer* complaint and the two policies in determining whether coverage should be provided to the appellant.

Appellant filed a cross-motion for summary judgment. He began by noting the exclusions to the insurance policy. He then asserted that the second sentence of the exclusionary clause creates an exception to the exclusion. He contended that

the coverage clause of Aetna's policy of insurance establishes that it will pay for damages which are the result of injuries sustained in an occurrence. The exclusion then creates a class or type of injury that Aetna will not pay for, *i.e.,* "bodily injury or property damage which is expected or intended from the standpoint of the insured." The language emphasized above then creates an exception to the exclusion which immediately precedes it and says, in essence, that Aetna will pay for bodily injury even though it may have been intended or expected from the standpoint of the insured if it "results from the use of reasonable force to protect persons or property." Aetna's creating coverage, then excluding certain injuries from coverage, and then creating an exception to the exclusion, has the effect of putting back into the coverage clause certain injuries that might be intended or expected from the standpoint of the insured.

Appellant then distinguished the exclusionary clause in *Eastern Shore* from the one in his case. He claimed that if the Aetna insurance policy clause only contained the first sentence, the court would be restricted, under *Eastern Shore*, to construe the alleged torts in the *Beyer* suit as intentional torts and exclude them from coverage. Due to the second sentence, however, the alleged torts were not necessarily excluded and there was a *potentiality* that they were covered.

The court heard oral argument on the matter and granted summary judgment in favor of appellee. In so doing, the court determined that Aetna, as a matter of law, did not have a duty to defend appellant due to the applicability of the exclusionary clause. The court relied on *Eastern Shore* for the proposition that in determining whether coverage existed, it was limited to reviewing the allegations made in the *Beyer* complaint. This appeal followed.

### The Duty to Defend

█ As presented above, appellant seeks to enforce Aetna's contractual obligation under the insurance contract.[1] Our review is limited to determining whether the circuit court was legally correct. *Heat & Power Corp. v. Air Prods. & Chems.*, 320 Md. 584, 590–92, 578 A.2d 1202 (1990); *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985). *See also Baltimore Import Car v. Md. Port Auth.*, 258 Md. 335, 339, 265 A.2d 866 (1970).

█ An insurer's duty to defend its insured is determined by the allegations contained in the underlying tort action. *Oweiss v. Erie Ins. Exchange*, 67 Md.App. 712, 717, 509 A.2d 711 (1986); *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407, 347 A.2d 842 (1975). In *Brohawn*, the Court of Appeals stated that:

> [t]he obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suit allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy.

*Id.* (citations omitted). In *St. Paul Fire & Mar. Ins. v. Pryseski*, 292 Md. 187, 193, 438 A.2d 282 (1981), the Court further explained:

> In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.

---

1. We choose to discuss both of appellant's arguments collectively.

### The Exclusive Pleading Rule

 The duty of an insurer to defend an insured was further clarified in *Eastern Shore*, 84 Md.App. at 624, 581 A.2d 452. In that case, we stated that an insurer's duty to defend is determined by assessing whether the allegations in the complaint fall within the policy coverage. This is known as the exclusive pleading rule. Thus, under this rule, an insurer's duty to defend an insured is determined by examining the policy language and the underlying complaint.

The Court of Appeals has recently stated that "[t]he insurer must defend its insured if it appears from the suit or *other sources* available at the time defense is tendered that there is a potential of liability under the policy." *See Bausch & Lomb v. Utica Mutual*, 330 Md. 758, 765 n. 1, 625 A.2d 1021 (1993); *Harford County v. Harford Mut. Ins.*, 327 Md. 418, 436 n. 6, 610 A.2d 286 (1992); *Mitchell v. Maryland Casualty*, 324 Md. 44, 62, 595 A.2d 469 (1991) (emphasis added). These cases may be interpreted as limiting the scope of the *Eastern Shore* decision. *Bausch & Lomb, Harford County,* and *Mitchell* do not, however, address the scope of the "other sources." For example, in *Mitchell,* the Court of Appeals took into account several affidavits that were submitted in support of a motion for summary judgment in deciding when coverage is triggered in an asbestos-related personal injury case. The Court in *Mitchell, Harford County* and *Bausch & Lomb,* however, did not expressly state whether the decision to look beyond the four corners of the complaint was meant to expand the exclusive pleading rule as explained in *Eastern Shore.* These cases, however, address the relevance of extrinsic evidence in the insurer's decision to defend a particular case.[2] Such an analysis is unnecessary in the instant case due to the reasons mentioned in the remainder of this opinion.[3]

---

2. We note that these cases address the interpretation of the terms of an insurance policy. It is clear that a court may consider extrinsic evidence to resolve questions of interpretation of the policy.

3. In any event, our decision in the instant case is not predicated on extrinsic evidence. Thus, even if the Court of Appeals does modify the

## Extent of the Coverage

■ We now turn to the requirements under *Pryseski*. First, we examine the language of the insurance policies to ascertain the extent of coverage available to appellant. In so doing, we note that basic rules of contract construction or interpretation are applicable. Maryland law requires that in deciding issues of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself. *Mitchell*, 324 Md. at 56, 595 A.2d 469; *Mut. Fire, Marine & Inland Ins. v. Vollmer*, 306 Md. 243, 250, 508 A.2d 130 (1986). The rule is that in construing the language of an insurance policy, words are given their "customary and normal meanings." *Harleysville Mutual Casualty Co. v. Harris & Brooks, Inc.*, 248 Md. 148, 151, 235 A.2d 556 (1967); *see Cheney v. Bell National Life*, 315 Md. 761, 766–67, 556 A.2d 1135 (1989). Unlike many other jurisdictions, Maryland has not adopted the rule that the provisions of an insurance policy are to be most strongly construed against the insurer. *See Id.; Mateer v. Reliance Ins. Co.*, 247 Md. 643, 648, 233 A.2d 797 (1967). In the event of an ambiguity, courts may consider extrinsic evidence as to the meaning of policy language. *Cheney*, 315 Md. at 766–67, 556 A.2d 1135; *Pacific Indem. v. Interstate Fire & Cas.*, 302 Md. 383, 388–89, 488 A.2d 486 (1985).

■ Appellant asserts that "bodily injury" caused while using reasonable force to protect persons or property is covered under the policies as an exception to the exclusionary clause. We agree. The pertinent language of the policies is not ambiguous. We thus ascribe to the words their natural and ordinary meaning. Accordingly, we conclude that the plain meaning of the second sentence in the exclusionary clause is that the insurer will cover bodily injury that is expected or intended from the viewpoint of the insured if it results from actions taken to protect persons or property.

---

scope of the *Eastern Shore* decision, our reasoning in the case sub judice would be unaffected.

Therefore, allegations of some intentional torts are covered by the insurance policies under certain circumstances, *i.e.*, "use of reasonable force to protect persons or property."

We now turn to the second step of the *Pryseski* analysis. In the case sub judice, the trial court was required to compare the scope of coverage of the insurance policies with the *Beyer* complaint to determine whether the complaint alleged a claim that would be covered. The *Beyer* complaint sets forth three separate counts against the appellant. Specifically, the first count states that "as a result of the [appellant's] act of assault, the Plaintiff, Victoria Beyer, who neither provoked nor consented to the [appellant's] actions was put in imminent fear of bodily harm." The second count states that "as a result of the [appellant's] act of battery, the Plaintiff, Victoria Beyer, without provocation or consent, was grabbed, shoved and pushed by the [appellant], Robert Cochran." Finally, the third count alleges loss of consortium, by the Plaintiff and her husband, due to the assault and battery counts previously mentioned.

The *Beyer* complaint alleges causes of action based on intentional torts only. Appellant asserts that assault and battery are intentional torts to which self-defense is available as a defense. Appellant further asserts that his alleged intentional torts may be of the class that fall within the exception to the exclusionary clause in the policies. Accordingly, he contends that there is a potentiality of coverage. We agree and explain.

The second sentence of the exclusionary clause limits the exclusionary nature of the first sentence. Thus, even though the *Beyer* complaint characterized appellant's actions as assault and battery, Aetna cannot automatically deny its duty to defend. Aetna's insurance policies provided coverage for some intentional torts, *even though the alleged actions were characterized as intentional torts in the underlying complaint,* if the action was undertaken to protect persons or property. Clearly, the *Beyer* complaint does not assert that appellant was acting in defense of person or property. The allegations in the *Beyer* complaint, do however, raise the

potentiality that the alleged intentional torts committed by appellant may be of the class that are covered by the exception to the exclusionary clause. This is because Aetna could not have determined whether appellant's actions *did not* fall within the class of covered intentional torts by examining the *Beyer* complaint and the two policies. Not every fact necessary to establish coverage must be alleged in the underlying complaint. *Brohawn,* 276 Md. at 408, 347 A.2d 842 ("Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy.") (emphasis in the original). As the Court of Appeals held in *USF & G V. Nat'l Pav. Co.,* 228 Md. 40, 54–55, 178 A.2d 872 (1962), the allegations in the complaint must be sufficient to indicate a potentiality that the act or omission is covered by the terms of the contract. *Accord Ohio Casualty Ins. v. Lee,* 62 Md.App. 176, 188–89, 488 A.2d 988, *cert. denied,* 303 Md. 471, 494 A.2d 939 (1985); *Ed. Winkler & Son v. Ohio Cas. Ins.,* 51 Md.App. 190, 194–96, 441 A.2d 1129 (1981); *American Home Assurance v. Osbourn,* 47 Md.App. 73, 81, 422 A.2d 8 (1980), *cert. denied,* 289 Md. 739 (1981). If there is a potentiality of coverage, any doubts as to the existence of a duty to defend are to be resolved in the insured's favor. *Loewenthal v. Security Ins. Co.,* 50 Md.App. 112, 118, 436 A.2d 493 (1981), *cert. denied,* 292 Md. 596 (1982).

In holding for Aetna, the lower court stated that:

[w]hile it is incongruous to expect *Beyer* to have alleged that Cochran's actions were in self-defense the state of the law in Maryland requires a pleading that excludes intentional conduct to afford coverage to such a defendant. There is no reason to look beyond the Complaint to determine if the claim is covered if there is a potentiality of coverage. The Complaint in the *Beyer* action alleges only the intentional torts of assault and battery. There is no allegation of negligence or unintentional conduct on the part of the [appellant]. Hence, the claim is not covered by the Aetna policy, nor is there a potentiality of coverage. The Court

cannot speculate that [appellant] might raise issues of self-defense.

The court, however, erred by not recognizing that the insurance policies' exclusionary clause in the instant case was different than that in *Eastern Shore*. Specifically, the court did not take into account the effect of the second sentence in the exclusion clause. Thus, because the Aetna policies covered some intentional torts, there was no need for any extrinsic evidence and a "potentiality of coverage" existed on the face of the *Beyer* complaint. Accordingly, we reverse.

REVERSED AND REMANDED TO THE CIRCUIT COURT FOR ALLEGANY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS ASSESSED TO THE APPELLEE.