536 A.2d 120

**HARFORD MUTUAL INSURANCE COMPANY**

v.

**Martin M. JACOBSON, Personal Representative of the Estate of Israel Louis Shapiro.**

**No. 626 Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Jan. 19, 1988.

Michael L. Cohen (Ronald E. Alper and Wilson, Elser, Moskowitz, Edelman and Dicker, on the brief), Baltimore, for appellant.

Jesse Spector, Baltimore, for appellee.

Argued before ROSALYN B. BELL, KARWACKI and POLLITT, JJ.

ROSALYN B. BELL, Judge.

Appellant, Harford Mutual Insurance Company, appeals a judgment of the Circuit Court for Baltimore City in favor of appellee, the Estate of Israel Louis Shapiro. The estate had filed suit, alleging, *inter alia*, that Harford, an insurer,

refused to defend the estate or pay settlement proceeds or attorney's fees in a suit filed against the estate. The circuit court found, under an insurance policy issued by Harford to the estate, that Harford had a duty to provide representation in defense of the case and pay the settlement figure. The court awarded the estate $32,000, the amount the estate paid to settle the underlying case plus attorney's fees. On appeal, we address the following issues: [1]

1. Whether appellant had a duty to defend the estate in the underlying court case.

2. Whether the "occurrence" for which coverage is claimed was within the policy period.

3. Whether the trial court erred by admitting a bill of services as evidence of attorney's fees.

Israel Louis Shapiro died in March of 1983 and Martin M. Jacobson and Dora Shapiro were appointed Personal Representatives of his estate.[2] Included in the assets of the estate were 69 one-family rental properties in Baltimore City. Jacobson obtained a liability insurance policy, effective June 3, 1983 to June 3, 1984, insuring the Estate and Personal Representatives against claims for damages arising out of the ownership, maintenance or use of the 69 designated properties.

On August 25, 1983, the Baltimore City Health Department issued a "Violation Notice to remove Lead Paint Nuisance." The notice reported that a child who frequented the dwelling at 1429 Madison Avenue, one of the properties covered by the insurance policy, had an abnormal amount of lead in her blood. The notice also stated that an inspection of the property indicated it contained lead-based paint which must be removed. In November of 1983, a suit was filed in the Circuit Court for Baltimore City against Jacobson in his capacity as personal representative of the

---

**1.** Appellant raised numerous issues on appeal. We address only those issues necessary to the disposition of the case.

**2.** Dora Shapiro died shortly before the circuit court case was filed.

estate, for lead paint poisoning, by Keisha Carter and Brenda Carter, her mother.

Appellee made a claim to appellant under the policy effective June 3, 1983 for coverage and defense of the Carter suit. Appellant retained counsel to defend appellee in the Carter case. During the course of its investigation, appellant discovered that the Baltimore City Health Department records indicated that Keisha Carter was afflicted with lead poisoning as early as September 8, 1982. Appellant also found that in November, 1982 and January, 1983, the child's mother had signed Baltimore City Health Department forms, indicating that there had been lead paint on the premises. Consequently, appellant withdrew its defense of the suit in April, 1984, having concluded that coverage was not available under the policy because the occurrence alleged in the Carter suit did not arise during the policy period. °

Appellee retained its own counsel to defend the *Carter* suit. The case was settled for $32,000 and a release was entered into by the parties. Appellee made a claim to Harford for the amount paid in settlement and an additional $8,000 for attorney's fees paid in defending and settling the case. After appellant failed to respond to the request for reimbursement of the $40,000, appellee filed suit in the Circuit Court for Baltimore City.

The court, sitting without a jury, found that there was a potential claim made under the policy in that the first time that the estate had notice of the injury to Keisha Carter was in August of 1983. The court concluded that appellant did not carry out the terms of the policy by refusing representation in defense of the case and in handling the settlement. The court awarded appellee $32,000. Although a check of $8,000 for attorney's fees was admitted into evidence over appellant's objection, the court found the basis for the check unclear. Consequently, the court evaluated the services performed by estate counsel on a reasonable value basis, and awarded the sum of $5,000 to the

estate for attorney's fees. It is from those findings and awards that appellant appeals.

## Duty to Defend

■ The duty of an insurer to defend its insured is determined by the allegations in the underlying tort action. If the plaintiff in the underlying suit alleges a claim covered by the policy, the insurer is obligated to defend. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407, 347 A.2d 842 (1975). Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy. *U.S.F. & G. v. National Paving and Contracting Co.*, 228 Md. 40, 54, 178 A.2d 872 (1962).

The complaint in the *Carter* case alleges, in pertinent part:

"That in 1981 the Plaintiff was in fact a tenant of said premises and the Defendant was in fact landlord of said premises .... [t]hat at or about 1981 the infant Plaintiff did consume said dangerous and illegal leaded paint chips found on the premises ... that as a result of consuming said leaded paint chips, the infant Plaintiff became seriously ill. That subsequent it was determined that the infant Plaintiff respectively had been subjected to lead poisoning attributable to consuming paint chips.... That the Defendant was found to be in violation of the Baltimore City Health Laws and ordinances regulating same and was ordered to remove said dangerous substance from the leased premises. That as a result of the negligence of the Defendant in permitting a potentially dangerous and fatal condition to exist on the leased premises, the infant Plaintiff has required extensive and continuous medical care, attention and treatment, and detoxification of blood lead level. The infant Plaintiff is still receiving treatment."

Under the insurance policy, Harford agreed to pay all sums which the estate became legally obligated to pay as a result

of bodily injury caused by an occurrence arising out of the use of the insured premises.

Appellant asserts that the only allegation in the complaint specifying the time the alleged hazardous material was consumed states that it was "at or about 1981." Appellant argues that the facts alleged in the *Carter* complaint establish that the operative acts or omissions giving rise to liability preceded the inception of the policy in June of 1983. Thus, appellant concludes it did not have a duty to defend appellee. We disagree.

While it is true that the declaration in the *Carter* case did not allege every fact necessary to establish Harford's coverage, we hold that there was enough to indicate a potentiality that the injury in question occurred during the time the policy was in effect.

The complaint specifically alleges that, as a result of the dangerous conditions that existed on the leased premises, Keisha Carter "has required extensive and continuous medical care, attention and treatment" and "the plaintiff is still receiving treatment." It is not disputed that, at the time the complaint was filed, and at the time Keisha Carter first received medical care and continued to seek treatment, appellee was covered under appellant's policy. In addition, the complaint states that the estate was found in violation of the city health laws and was ordered to remove the lead chips from the leased premises. This notice of violation and order to eradicate the dangerous condition was issued after the policy became effective. This was sufficient to put Harford on notice that there was potential coverage under the policy if Keisha Carter's injuries and need for medical care were found to be the result of a dangerous condition existing at the insured premises.

In *Brohawn*, 276 Md. at 396, 347 A.2d 842, the complaint in the underlying action against the insured was based on alternative allegations of negligence and assault. The insurer, Transamerica Insurance Company, argued that it was not obligated to defend or indemnify the insured

because the insurance policy specifically excluded from coverage any act committed by the insured with the intent to injure. In addition, the insured had pled guilty to assault in a previous criminal action arising from the same incident. *Brohawn*, 276 Md. at 401, 347 A.2d 842. In holding that the insurer had a duty to defend the insured, the Court said:

> "While Transamerica may believe that the evidence of the guilty plea would establish that any injuries sustained by Mrs. Shaffer or Mrs. Friend were the result of intentional acts by Mrs. Brohawn, this belief will not relieve Transamerica of its duty to defend its insured in suits which allege an unintentional tort covered by the policy. The obligation is contractual and exists because of the agreement made by Transamerica with Mrs. Brohawn. Transamerica has expressly promised to 'defend any suit against the Insured alleging such bodily injury ... and seeking damages which are payable under the terms of this [policy], even if the allegations of the suit are *groundless, false, or fraudulent.*'" (Brackets in original. Emphasis in original.)

*Brohawn*, 276 Md. at 408, 347 A.2d 842.

The Court quoted with approval Chief Judge Learned Hand's interpretation of the same policy provision:

> "'This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury "covered" by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact "covered." The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is "groundless."'"

*Brohawn*, 296 Md. at 408, 347 A.2d 842, quoting *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750, 751–52 (2d Cir.1949).

In the case *sub judice*, the insurance policy provides, in pertinent part:

"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises ... and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, *even if any of the allegations of the suit are groundless, false or fraudulent....*" (Emphasis added.)

Thus, while Harford may believe that the incidents giving rise to liability preceded the date the policy became effective, in a suit which alleges the existence of bodily harm during the policy period, this belief will not relieve it of its duty to defend its insured.

We are not saying that upon discovering sufficient evidence that the policy did not cover the alleged occurrence Harford necessarily had no option but to continue to defend the insured. When a dispute over coverage arises during the course of a pending tort suit, that question can be determined by a trial court in a declaratory judgment action.[3] *Brohawn,* 276 Md. at 404, 347 A.2d 842. In *Brohawn,* the Court said:

"A declaratory judgment action prior to the trial of a tort action against the insured may under some circumstances be a valuable means of resolving questions of

---

**3.** We recently addressed the full range of remedies available to an insurer who disclaims coverage in *Allstate Insurance Co. v. Atwood,* 71 Md.App. 107, 523 A.2d 1066 (1987). Chief Judge Gilbert, speaking for the Court, said:

"We perceive nothing ... that forbids the carrier, after supplying independent counsel to its insured or paying the costs of the insured's choice of counsel, from intervening as a party and being represented at the tort trial."

*Allstate,* 71 Md.App. at 113–14, 523 A.2d 1066.

policy coverage where those questions are independent and separable from the claims asserted in a pending suit by an injured third party. An early resolution could avoid unnecessary expense and delay to the parties. Thus, where an insurance company claims lack of coverage because of the insured's failure to comply with contract provisions such as the cooperation or notification clause, or failure to pay premiums, a declaratory judgment would ordinarily be appropriate and should be granted." (Citations omitted.)

*Brohawn*, 276 Md. at 405, 347 A.2d 842.[4]

In the case *sub judice*, appellant unilaterally determined that it had no duty to defend appellee and withdrew from the case. This was not appropriate and appellant must expect to be held accountable for its actions. We, therefore, affirm the trial court's finding and its award to appellee of reasonable attorney's fees.

### Coverage Under the Policy

 The trial court found that the policy covered the claim alleged in the *Carter* case because the first notice the estate had with respect to the injury suffered by Keisha Carter was on August 15, 1983, which was within the policy period. Appellant asserts that the first time Keisha Carter was diagnosed as having elevated blood lead levels was in September of 1982, which was outside the policy period. Thus, appellant contends that, because the "occurrence" happened prior to the inception of the policy issued by appellant to appellee, no coverage is available. Appellee, on the other hand, would have us hold that the definition of "occurrence" as "including continuous or repeated exposure to conditions" should be interpreted broadly to include

---

**4.** In *Brohawn,* the Court found that a declaratory judgment action was not appropriate because the issue of coverage, *i.e.,* whether the insured's actions were intentional or negligent, would be decided in the underlying tort suit. *Brohawn,* 276 Md. at 405, 347 A.2d 842. In the case *sub judice,* while the *Carter* case would have decided *if* the estate was liable, it would not have resolved the issue of *when* the actual injuries first took place.

coverage as long as the occurrence, or even part of the occurrence, takes place during the policy period.

We disagree with the trial court's conclusion and appellee's argument. We hold that there is no coverage under the policy because injury resulting from the alleged negligent acts was first discovered *before* the policy became effective.

In Maryland, an insurance policy is like any other contract and is to be read and construed in the same way. *National Indem. Co. v. Continental Ins. Co.*, 61 Md.App. 575, 580, 487 A.2d 1191 (1985). An insurance contract must be read as a single document and is to be construed as a whole. *Federal Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 473, 341 A.2d 399 (1975). In interpreting insurance contracts, words are to be given their customary and normal meaning. *C & H Plumbing & Heating, Inc. v. Employers Mutual Casualty Co.*, 264 Md. 510, 511, 287 A.2d 238 (1972).

In the case *sub judice*, the policy at issue provides for coverage of bodily injury caused by an "occurrence" and arising out of the use of the insured premises. "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury ... neither expected nor intended from the standpoint of the insured...." Section 3 of the policy states:

"For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general condition shall be considered as arising out of *one* occurrence." (Emphasis added.)

Finally, "bodily injury" is defined as "bodily injury, sickness or disease sustained by any person *which occurs during the policy period....*" (Emphasis added.)

In this case, the policy, while defining "occurrence" to include continuous or repeated exposure to conditions, expressly defines bodily injury arising from such exposure to be limited to *one* occurrence. In addition, bodily injury is

specifically limited to that "which occurs during the policy period." Thus, contrary to appellee's contention, if there is to be coverage in situations where there is continuous or repeated exposure, the event which is determined to give rise to the one "occurrence" must be within the policy period.

The issue becomes: What event gives rise to an occurrence within the meaning of the policy when there is repeated or continuous exposure to a condition? Although this is a case of first impression in Maryland, there are a significant number of cases in both the federal and other state courts which have dealt with this issue.

The general rule is that "the time of occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged."[5] *United States Fidelity & Guaranty Co. v. American Ins. Co.,* 169 Ind.App. 1, 345 N.E.2d 267, 270 (1976). The Courts consistently hold that the party was "damaged" when the injuries first manifested themselves.

In *Mraz v. Canadian Universal Ins. Co. Ltd.,* 804 F.2d 1325 (4th Cir.1986), in 1969, a solvent recycling company contracted to have moved and buried 1300 barrels of chemical wastes. In 1982 the Environmental Protection Agency and the State of Maryland inspected the disposal site and determined that the buried drums were hazardous and in

---

**5.** *See Aetna Casualty & Surety Co. v. PPG Industries, Inc.,* 554 F.Supp. 290, 294 (D.Ariz.1983) (coverage is based upon the time the damage was discovered); *Singsaas v. Diederich,* 238 N.W.2d 878, 880 (Minn. 1976) (collapse of negligently installed manlift); *Travelers Ins. Co. v. C.J. Gayfer's & Co.,* 366 So.2d 1199, 1202 (Fla.App.1979) (faulty roof drainage system finally leaks); *Middle Dept. Inspection Agency v. Home Ins. Co.,* 154 N.J.Super. 49, 380 A.2d 1165, 1167–68 (1977) (negligently inspected electrical equipment produced fire after policy expired); *Millers Mut. Fire Ins. Co. of Texas v. Ed Bailey, Inc.,* 103 Idaho 377, 647 P.2d 1249, 1251 (1982) (fire due to faulty installation of insulation occurs after policy expired); *Harford Accident & Indemnity Co. v. Aetna Life & Casualty Ins. Co.,* 98 N.J. 18, 483 A.2d 402, 409 (1984) (coverage depends not on when drug ingested but when resulting injuries first manifest themselves).

violation of the law. The EPA and Maryland removed the drums, cleaned up the site and then filed suit in 1983 against the company to recover their clean-up and removal costs. The company sought coverage under an insurance policy which was in effect in 1969 when the drums were first disposed of. That policy provided coverage for property damage caused by an occurrence "during the policy period." The company sought a declaratory judgment that the insurer had a duty to defend and indemnify them. The Court of Appeals reversed the trial court's finding and held that, in hazardous waste burial cases, the occurrence is judged by the time at which the leakage and damage are *first* discovered. *Mraz*, 804 F.2d at 1328. In so holding, the Court said:

"There are situations, however, in which the existence or scope of damage remains concealed or uncertain for a period of time even though damage is occurring. The leakage of hazardous wastes as in this case is a clear example. Determining exactly when damage begins can be difficult, if not impossible. *In such cases we believe that the better rule is that the occurrence is deemed to take place when the injuries first manifest themselves.*" (Emphasis added.)

*Mraz*, 804 F.2d at 1328.

In *Bartholomew v. Appalachian Insurance Co.*, 655 F.2d 27 (1st Cir.1981), the manufacturer of defective car wash equipment sought to collect from its insurer moneys it had paid as a result of property damage caused by its equipment. Although the damage occurred over a period of two years ending in September, 1974, the manufacturer's insurance policy did not take effect until June, 1974. *Bartholomew*, 655 F.2d at 28. The insurance policy provided coverage for property damage caused by an occurrence "which occurs during the policy period." *Bartholomew v. Insurance Co. of North American*, 502 F.Supp. 246, 250 (D.R.I.1980), *aff'd*, 655 F.2d 27 (1st Cir.1981).

The manufacturer appealed the lower court's granting of summary judgment, arguing that, since the equipment con-

tinued to cause damage into the policy period, it was at least a question of fact whether the "occurrence" occurred after the insurance commenced. The appellate court affirmed the trial court's finding that as a matter of law it did not. *Bartholomew*, 655 F.2d at 28. The Court said:

"Strictly, the act for which a manufacturer is liable is the initial supplying of defective equipment. However, the cause of action is held to arise when the defect takes effect or is discovered.... Thus, when a plaintiff, some time after having purchased a ladder fell therefrom and was injured, thereby discovering an alleged defect, it was the manufacturer's insurer at that date, if any, that was responsible, and not the insurer at the date of the sale. *Landerman v. United States F. & G. Co.*, [25 Conn.Supp. 297] 203 A.2d 150 (Super.Ct.1964). This is not to say, however, that if the plaintiff had continued to use the ladder, and was injured again at a later date, when there was a third insurer, that that company would be liable. *The 'occurrence' is the establishing event.* At the risk of appearing pedantic, the insurance is against an occurrence, not a reoccurrence...."

*Bartholomew*, 655 F.2d at 28–29 (Emphasis added) (some citations omitted).

Finally, in *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56 (3rd Cir.1982), the issue was whether a liability insurer must provide coverage for losses its insured incurred in the settlement of an employment sex discrimination suit where the insured's discriminatory conduct had an impact on employees both before and after the effective date of coverage. *Appalachian*, 676 F.2d at 58. The policy provided coverage for damages on account of personal injuries caused by an occurrence. The policy defined occurrence as "an accident or a happening or a continuous or repeated exposure to conditions ... resulting in personal injury ... during the policy period." *Appalachian*, 676 F.2d at 59 n. 8.

The Court held that the determination of when an occurrence happens must be made by reference to the time when the injurious exposure produces personal injury. *Appalachian*, 676 F.2d at 62. The Court recognized the injurious effects of the employment policies began immediately upon their adoption and continued to some extent into the period of coverage provided by the insurance company. Nevertheless, the Court held that the occurrence takes place when the injuries *first* manifest themselves. *Appalachian*, 676 F.2d at 62. In explaining its holding, the Court said:

"A contrary result in this case would contravene the rule that an insured cannot insure against something which has already begun. The rule is based on the realization that the purpose of insurance is to protect insureds against unknown risks. When the Appalachian policy became effective, however, the risk of liability was no longer unknown because injuries resulted immediately upon Liberty's promulgation of its discriminatory policies." (Citations omitted.)

*Appalachian*, 676 F.2d at 63.

We agree with those cases that the date of an "occurrence" for purposes of determining coverage under an insurance policy is the date when the harm is first discovered. In the case *sub judice*, the insurance policy provided coverage only for an occurrence which gave rise to bodily harm *during the period*. Keisha Carter was first exposed to leaded paint in 1981. Unquestionably, the injurious effects of that exposure persisted into the period of coverage. But, her injuries first manifested themselves *prior* to coverage when she was diagnosed in 1982 by the Baltimore City Health Department as having lead poisoning. Thus, we reverse the trial court's finding that appellant was obligated to indemnify appellee for the $32,000 the latter paid in settlement of the *Carter* case.

Appellee filed a cross-appeal contending that the court erred in refusing to award interest on the $32,000 settlement. In light of our holding, we affirm the trial court's

decision not to award appellee interest on the $32,000 it paid in settling the *Carter* case.

## Attorney's Fees

■ Appellant claims that the trial court erred by allowing as evidence the estate's $8,000 check for attorney's fees payable to Jesse Spector, the attorney who handled the *Carter* case once appellant withdrew. Appellant argues that the document was inadmissible because appellee failed to lay a proper foundation, showing it to be a business record and failed to establish that the charges were fair and reasonable.

The trial court found that the evidence was unclear that the check was intended to be for the representation of the *Carter* suit. Accordingly, the court evaluated the evidence of services performed on the basis of a reasonable value or quantum meruit. Based on the evidence, the court found the reasonable value of Mr. Spector's services to be $5,000.

A reviewing court will not reverse for an error by the lower court unless it is an error both manifestly wrong and substantially injurious. *I.W. Berman Properties v. Porter Bros., Inc.*, 276 Md. 1, 11–12, 344 A.2d 65 (1975). The complaining party has the burden of showing prejudice as well as error. *Beahm v. Shortall*, 279 Md. 321, 330, 368 A.2d 1005 (1977).

In the case *sub judice*, appellant has failed to introduce any evidence of prejudice. It is evident that the court was not persuaded by the $8,000 check and based its award of attorney's fees on an independent review of the facts. Thus, even if the check was in fact inadmissible, it would constitute harmless error under the circumstances.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.