## APPLIED SIGNAL & IMAGE TECHNOLOGY, INC.

v.

## HARLEYSVILLE MUTUAL INSURANCE CO.

No. CIV.CCB–02–1944.

United States District Court,
D. Maryland.

March 14, 2003.

Peter H. Gunst, Donna M.D. Thomas and Ahn, Astrachan Gunst and Thomas PC, Baltimore, MD, Jonathan F. Monheit, Jonathan F. Monheit PA, Towson, MD, for Plaintiff.

William Carlos Parler, Jr., Parler and Wobber LLP, Towson, MD, for Defendant.

### MEMORANDUM

BLAKE, District Judge.

Plaintiff Applied Signal and Image Technology, Inc. ("ASIT") has sued Harleysville Mutual Insurance Co. ("Harleysville") for attorneys' fees and costs incurred in defending against a suit filed by Joseph Hejl, a shareholder and former corporate officer of ASIT. ASIT moves for partial summary judgment on the liability of Harleysville for such fees and costs. Harleysville has filed a cross-motion for summary judgment. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the court will grant ASIT's motion and deny Harleysville's motion.

I.

ASIT, a company engaged in the business of signal and image processing technology for government and commercial contracts, was incorporated in 1994 by Dr. Joseph Harsanyi and Hejl, who were then each fifty percent shareholders and directors of the company. In 1996, John

Schveibinz was added as a director and shareholder.

In January 2001, Hejl took a leave of absence from ASIT due to illness. He returned to work part-time in April 2001. In May 2001, he requested that ASIT redeem his stock; and, on June 8, 2001, he resigned as Vice–President/Treasurer of ASIT. Hejl, however, remained a shareholder, director, and part-time employee of ASIT. On June 25, 2001, Hejl was terminated.

Hejl brought suit against ASIT, Harsanyi, and Schveibinz in the Circuit Court for Anne Arundel County on July 5, 2001. In his complaint, which was amended on August 4, 2001, Hejl alleged that Harsanyi and Schveibinz engaged in illegal activities, including unauthorized investments and waste of corporate assets, unauthorized payment of bonuses to themselves, and unauthorized payments of overtime. (*See* Verified Compl. Exs. 1, 2.) Hejl sought injunctive relief dissolving the corporation and enjoining Harsanyi and Schveibinz from continuing their alleged illegal activity. Hejl also brought claims for breach of fiduciary duty, wrongful discharge, conversion, and, of most relevance to the present case, a claim for "false light." [1]

ASIT was insured by Harleysville from September 10, 2000 until September 10, 2001 through policy number BO3E3519 (the "policy"). The policy provided: "[Harleysville] will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'personal injury' ... to which this insurance applies." (Def.'s Ex. 4 § II.A.1.) Moreover, the "insurance applies [t]o 'personal injury' caused by an offense: (a) Committed in the 'coverage territory during the policy period; and (b) Arising out of the conduct of [the insured's] business, excluding advertising, publishing, broadcasting or telecasting done by or for [the insured]." (*Id.* § II.A.1.a.(2).) The policy further stated that " 'personal injury,' means injury other than 'bodily injury,' arising out of one or more of the following offenses: ... Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or ... Oral or written publication of material that violates a person's right of privacy...." (*Id.* § II.F.10.)

On August 14, 2001, Applied Signal's counsel forwarded a copy of Hejl's complaint to Harleysville and requested coverage under the policy and that Harleysville provide a legal defense to ASIT. (*See* Verified Compl. Ex. 4.) [2] Under the policy, Harleysville had "the right and duty to defend any 'suit' seeking ... damages [covered by the policy]." (Def.'s Ex. 4 § II.A.1.b.) "Suit" was defined in the policy as "a civil proceeding in which damages because of ... 'personal injury' to which this insurance applies are alleged." (*Id.* § II.F.13.) The policy, however, contained an "Employment–Related Practices Exclusion," which stated:

This insurance does not apply to "bodily injury" or "personal injury" arising out of any:

a. Refusal to employ;

b. Termination of employment;

---

1. More specifically, Hejl alleged that the defendants distributed information to employees falsely attributing the instability of ASIT to Hejl and claiming that Hejl was "crippling the company," thereby causing damage to Hejl's reputation. (Hejl Amended Compl., Verified Compl. Ex. 2 ¶¶ 83–85.)

2. In ASIT's original request to Harleysville for coverage, ASIT asserted that coverage was required due to Hejl's false light claim under § II.F.10 of the policy. (*See* August 14, 2001 letter to Harleysville, Verified Compl. Ex. 4 at 3–4.)

c. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

d. Consequential "bodily injury" or "personal injury" as a result of a. through c. above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

(Def.'s Ex. 4, BO–7233).

On October 19, 2001, Harleysville Litigation Specialist Lori Rowland stated in a letter to ASIT: "We have been in contact with your personal attorney, Kathryn Miller Goldman and have agreed that she will continue to represent you in this matter and defend your interests in this lawsuit." (Verified Compl. Ex. 5 at 3.) The letter further stated that Harleysville "reserve[d] the right to set up any and all defenses including but not limited to a denial of coverage under [the policy]" and "also reserve[d] its right to *withdraw its defense of [the] law suit* if it is determined that Harleysville has no duty to defend you." (*Id.* at 1, 3 (emphasis added).) Harleysville also stated that it was not "waiving any of [its] rights or admitting any obligations under said policy." (*Id.* at 1.)

On November 15, 2001, ASIT reached a settlement agreement with Hejl, to which Harleysville contributed $25,000.00. At no time prior to November 15, 2001 had Harleysville attempted to withdraw its defense of ASIT. Subsequently, on December 18, 2001 and January 10, 2002, ASIT forwarded copies of invoices for legal fees and costs totaling $88,093.66 to Harleysville. (Verified Compl. Exs. 7A, 7B.) Harleysville declined to pay most of the legal fees

incurred by ASIT. While admitting in its letter dated January 25, 2002 that: "[t]he allegation of (False Light) Count IV triggered coverage under the Business Owners policy requiring Harleysville to provide a defense for all claims," Harleysville nonetheless suggested that defense costs should be apportioned between Count IV and the other "noncovered" claims and offered only $5840.01 (7%) toward the payment of defense costs. (Verified Compl. Ex. 8.) Accordingly, ASIT brought this suit.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.1991). The "mere existence of a

scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### III.

It is not disputed that Harleysville undertook to provide a defense for ASIT against the suit brought by Hejl. The only issue in this case is whether Harleysville, after initiating such a defense, is entitled to withdraw its agreement to pay the fees incurred by ASIT. Harleysville argues that it should not have to pay defense fees because the policy did not in fact cover the Hejl complaint.[3] This argument fails, however, because it does not differentiate between Harleysville's duty to indemnify and its duty to defend ASIT.

█ In Maryland, the duty of an insurer to defend an insured and the duty to indemnify are two distinct requirements. Maryland courts follow the "potentiality rule" in determining whether an insurer has a duty to defend. Under this rule, an insurer has a duty to defend when there exists a *"potentiality* that the claim could be covered by the policy." *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842, 850 (1975) (emphasis added). "The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums. Although the type of policy here considered is most often referred to as liability insurance, it is 'litigation insurance' as well, protecting the insured from the expense of defending suits brought against him." *Id.* at 851. Thus, under Maryland law, "[t]he duty to defend is broader than the duty to

indemnify." *Litz v. State Farm Fire & Cas. Co.,* 346 Md. 217, 695 A.2d 566, 569 (1997). In *Litz,* the Court of Appeals cited favorably a commentator's statement that: "[t]he defense obligation extends even to those claims filed in bad faith for the sole purpose of raising a potentiality of coverage." *Id.* at 570.

█ Harleysville did not expressly reserve its right to seek reimbursement of defense fees if it was later determined that there was no duty to indemnify.[4] Therefore, Harleysville cannot now withdraw its agreement to pay the defense fees incurred by ASIT. *See First Financial Ins. Co. v. GLM, Inc.,* 88 F.Supp.2d 425, 431 (D.Md.2000) ("[The insurer] voluntarily chose to provide counsel to defend [the insured] in the Underlying Litigation. As such, it is not now entitled to the recovery of attorneys' fees and costs incurred in the state court suit."); *cf. Harford Mutual Ins. Co. v. Jacobson,* 73 Md.App. 670, 536 A.2d 120, 124 (1988), *cert. denied,* 312 Md. 601, 541 A.2d 964 (1988) ("In the case *sub judice,* [the insurer] unilaterally determined that it had no duty to defend [the insured] and withdrew from the case. This was not appropriate and [the insurer] must expect to be held accountable for its actions.").

This position is consistent with the potentiality rule because the potentiality rule does not make the duty to defend contingent on the duty to indemnify. As the Third Circuit explained:

> Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may ex-

---

**3.** Harleysville specifically argues that the "Employment–Related Practices Exclusion" applies to Hejl's claims and that Harleysville, therefore, had no duty to defend or to indemnify.

**4.** Harleysville did reserve the right to withdraw its defense of ASIT. Such withdrawal, however, did not occur.

pose it to if it turns out there is a duty to indemnify. At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful. Thus, such an offer is made at least as much for the insurer's own benefit as for the insured's. If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation. Accordingly, a declaration that there was no duty to defend will not entitle [the insured] to recover any costs it has expended.

*Terra Nova Ins. Co. v. 900 Bar, Inc.,* 887 F.2d 1213, 1219–20 (3d Cir.1989) (footnote and internal citation omitted).

Moreover, if Harleysville had determined that it had no duty to indemnify ASIT while the Hejl suit was pending, Harleysville had a right to seek a declaratory action stating that it no longer had a duty to defend or to indemnify. *See Harford Mutual,* 536 A.2d at 124 (*citing Brohawn,* 347 A.2d at 845). It failed to do so. Harleysville is not now entitled to unilaterally withdraw its defense by refusing to pay ASIT's defense fees.[5] Accordingly, ASIT's motion will be granted.[6]

A separate order follows.

---

5. Harleysville's argument that it cannot create coverage by waiver is inapposite. That argument may be relevant to the duty to indemnify, but is not relevant to the duty to defend. Unlike the policy at issue in *Provident Bank of Maryland v. Travelers Prop. Cas. Corp.,* 236 F.3d 138, 145 (4th Cir.2000), there is no dispute that the Harleysville policy includes a duty to defend.

6. Under Maryland law, an insured who succeeds in litigation against a liability insurer that denies coverage or the duty to defend is entitled to counsel fees in that litigation. *See Mesmer v. Maryland Auto. Ins. Fund,* 353 Md.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Plaintiff's motion for partial summary judgment is **Granted**;

2. Defendants' motion for summary judgment is **Denied**;

5. The parties shall submit supplemental memoranda or status reports regarding the amount of attorneys' fees and costs in dispute by April 14, 2003; and

6. The Clerk shall send copies of this Order and the accompanying Memorandum to counsel of record.

241, 725 A.2d 1053, 1064 (1999) ("Instead, the damages for breach of the contractual duty to defend are limited to the insured's expenses, including attorney fees, in defending the underlying tort action, as well as the insured's expenses and attorney fees in a separate contract or declaratory judgment action if such action is filed to establish that there exists a duty to defend."); *Nolt v. United States Fid. & Guar. Co.,* 329 Md. 52, 617 A.2d 578, 584 (1993). Accordingly, the Court will also award ASIT reasonable attorneys' fees and costs associated with litigating this suit.